WILLIAM E. ANDERSON, ADMINISTRATOR OF THE ESTATE OF ALBERT LEE BRACKETT, DECEASED v. RALPH M. CRAWFORD AND HOWELL W. CRAWFORD, T/D/B/A CRAWFORD FUNERAL HOME

No. 7128SC267

(Filed 26 May 1971)

Automobiles § 83— pedestrian struck by ambulance — contributory negligence

    The evidence established that a pedestrian's negligence was a proximate cause of injuries he received when he was struck by defendant's ambulance while crossing a four-lane highway at a point that was neither at an intersection nor within a marked crosswalk.

APPEAL by plaintiff from *Ervin, J.,* November 1970 Civil Term of Superior Court held in BUNCOMBE County.

This action was instituted to recover damages for injuries sustained by Albert Lee Brackett, plaintiff's 76 year-old intestate, when struck by defendants' ambulance on Patton Avenue, a four-lane highway in Asheville. Issues of negligence, contributory negligence, last clear chance and damages were raised by the pleadings. There is no allegation that the subsequent death of plaintiff's intestate was caused by the accident. At the conclusion of plaintiff's evidence defendants moved for a directed verdict on the grounds that the evidence failed to disclose negligence of the plaintiff, did establish contributory negligence of plaintiff's intestate and that there was no evidence upon which the doctrine of last clear chance could be applied. At the conclusion of all the evidence the motion was renewed. From a judgment allowing the motion and dismissing the action, plaintiff appealed.

*Wade Hall for plaintiff appellant.*

*Williams, Morris and Golding by James N. Golding for defendant appellees.*

VAUGHN, Judge.

The only question presented by this appeal is whether the court erred in allowing defendants' motion for a directed verdict. The evidence tends to show the following. Patton Avenue is 48 feet wide with two lanes for westbound traffic and two lanes for eastbound traffic. Defendants' ambulance was in the inside lane proceeding in an easterly direction. The posted speed

limit was 35 miles per hour. Plaintiff's intestate, at a point that was neither at an intersection nor within a marked crosswalk, stepped from the curb on the south side of Patton Avenue and proceeded at a fast walk directly across the avenue. A detective with the Asheville Police Department was operating his vehicle in the outside or southern lane proceeding in an easterly direction about 25 or 30 yards behind the ambulance. His testimony, as a witness for plaintiff, was, in part, as follows:

". . . The ambulance was going at a slow speed, I would say approximately in the neighborhood of 30 miles an hour. . . .

". . . I did not actually see Mr. Brackett step off the curb. When I first observed him I would say he was approximately three feet stepping out into the road. At that time the ambulance would have been just a little west of Bear Creek Road at the time I first observed Mr. Brackett. The ambulance and Mr. Brackett were a short distance away from each other when I first observed him. I observed that the ambulance was trying to slow or stop before the actual impact occurred. Yes, I described the ambulance as taking some evasive action, namely, trying to cut the ambulance away from the pedestrian or Mr. Brackett, cut the ambulance to the left toward the double yellow line and into the westbound inside westbound lane. I would estimate the ambulance to be going 5 to 10 miles per hour at the point of impact."

•  •  •  •

"The ambulance was steering away from Mr. Brackett, was trying to steer somewhere other than where he was located. I actually saw the impact. I saw the right front of the ambulance and Mr. Brackett come in contact somewhere in the headlight area on the front fender and just to the left of it. It could have been just behind the headlight on the right side. . . ."

•  •  •  •

"I would say the main part of Mr. Brackett's body was just across the double yellow line, his head was just to the north of the double yellow line and the rest of his body was in the southerly direction towards the south curb, in the inside eastbound lane. I would say he was approximately 3 feet in front of the ambulance lying on the pavement.

The front of the ambulance was at an angle and he was right directly at a point about 3 foot in front of the ambulance lying across the double yellow line. The ambulance had gotten over into the inside westbound lane. The ambulance was just about stopped at the time of the impact. . . ."

Plaintiff introduced the deposition of defendant Ralph M. Crawford, operator of the ambulance, which in part contained testimony substantially as follows. The patient's wife was in the rear of the ambulance with the patient and an ambulance assistant. The patient's sister-in-law was in the front seat with the defendant. He was driving at about 30 or 35 miles per hour and had the red blinker light on. He observed plaintiff's intestate standing on the curb with two other men. When the ambulance was about 75 feet away, the plaintiff's intestate stepped off the curb and proceeded across the street, increasing his gait after a couple of steps. Defendant sounded his siren, applied his brakes and cut to his left. If he had applied his brakes any harder the vehicle would have overturned. Plaintiff's intestate hit the right door of the ambulance leaving a small dent.

There was evidence that the patient being transported was ill with cancer and could not be touched with hands but had to be moved by sheets. There was also evidence that the cot on which the patient was lying was anchored to the ambulance, but that the patient was not secured to the cot.

All of the evidence tends to show that at the time plaintiff's intestate stepped from the curb, the ambulance was being operated in a careful and prudent manner. There is no evidence that the defendant operator was thereafter negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming plaintiff's intestate. Indeed, the evidence affirmatively establishes the contrary and that the negligence of plaintiff's intestate was a proximate cause of his injuries. The applicable principles of law arising on the evidence in this case are well established and it is not deemed necessary to recapitulate them here. Defendants' motion for a directed verdict was properly allowed.

Affirmed.

Chief Judge MALLARD and Judge PARKER concur.